```
 1                    UNITED STATES DISTRICT COURT
                       MIDDLE DISTRICT OF FLORIDA
 2                          ORLANDO DIVISION
                           Case No. 6:17-cr-99
 3
     . . . . . . . . . . . . . . .
 4   UNITED STATES OF AMERICA,    :
                                  :
 5             Plaintiff,         :        Orlando, Florida
                                  :        November 15, 2017
 6             v.                 :        9:00 a.m.
                                  :
 7   LUIS RIOS,                   :
                                  :
 8             Defendant.         :
     . . . . . . . . . . . . . . .
 9

10
                   TRANSCRIPT OF SENTENCING HEARING
11              BEFORE THE HONORABLE G. KENDALL SHARP
                    UNITED STATES DISTRICT JUDGE
12

13   APPEARANCES:

14

15   Counsel for Plaintiff:      Sean P. Shecter

16

17   Counsel for Defendant:      Thomas H. Dale

18

19

20

21   Court Reporter:    Amie R. First, RDR, CRR, CRC, CPE
                        Federal Official Court Reporter
22                      401 West Central Boulevard, Suite 4600
                        Orlando, Florida  32801
23                      AmieFirst.CourtReporter@gmail.com

24   Proceedings recorded by mechanical stenography.

25   Transcript produced by Computer-Aided Transcription.
```

**INDEX OF PROCEEDINGS**

**ALLOCUTION**

Defendant Luis Rios ........................... 5


**ARGUMENT**

By Mr. Dale ................................... 6

By Mr. Shecter ............................... 10

By Mr. Dale .................................. 12


Pronouncement of Sentence .................... 14

```
 1                    P R O C E E D I N G S
 2                           *****
 3          THE DEPUTY CLERK:  This is in the matter of the
 4   United States of America versus Luis Rios, Case Number
 5   6:17-criminal-99-Orlando-18GJK.
 6          Will counsel please state your name for the
 7   record.
 8          MR. SHECTER:  Good morning, Your Honor.  Sean
 9   Shecter on behalf of the United States.  With me at
10   counsel's table is ATF PTO Sharon Ring.  Also, we'd like to
11   recognize in the chamber two OPD officers, Sergeant Wesley
12   Whitehead and Officer Amanda Dawson.
13          THE COURT:  All right.
14          MR. DALE:  Good morning, Your Honor.  Tom Dale
15   appearing for Mr. Rios, standing next to me.
16          THE DEPUTY CLERK:  Mr. Rios, would you please
17   raise your right hand and place your left hand on the Bible
18   that's in front of you.
19          (Defendant sworn.)
20          THE DEFENDANT:  I do.
21          THE COURT:  I received this morning a notice,
22   notice to enhance the elements of the offense.
23          The Government filed an unopposed motion to
24   continue the sentencing of this case on October 6th stating
25   that it was thinking about presenting a document placing
```

```
 1   this defendant as an armed career criminal.  That was
 2   October 6th.
 3           The Court received their intention this morning.
 4   It was filed at 4:30 yesterday afternoon.  I didn't receive
 5   it until this morning.  The Court finds that unacceptable
 6   from the U.S. Attorney's Office.
 7           So that will be stricken.
 8           Mr. Rios, you entered a plea of guilty to count
 9   one, a felon in possession of a firearm.  Under the
10   presentence report, that gives you a total offense level
11   of 25, criminal history category V, which gives you an
12   exposure of up to 120 months in the Bureau of Prisons.
13           Have you gone through your presentence report with
14   your attorney?
15           THE DEFENDANT:  Yes.
16           THE COURT:  And is there anything regarding the
17   contents of the report that you would like to place on the
18   record?
19           MR. DALE:  No, Your Honor.  There were no
20   objections.
21           THE COURT:  Any objections to the report from the
22   Government?
23           MR. SHECTER:  No objections, Your Honor.
24           THE COURT:  Mr. Rios, do you have anything that
25   you'd like to state for the Court before I sentence you?
```

1           Please step up right to the microphone.
2           THE DEFENDANT: Yes. I'm sorry for wasting
3   everybody's time. I know you read the PSI and all the
4   stuff that I did as a child and all the stuff that I didn't
5   really mean to do. There's really no excuse for what I
6   did, but I'm not that person that they portray me to be in
7   the PSI.
8           I came to Florida trying to do something
9   different. And I was doing good until a little situation
10  with my girlfriend and police got involved and there was a
11  weapon in the house and so forth.
12          But yeah, I'm just sorry for just wasting
13  everybody's time and going through all this and letting it
14  come to this.
15          THE COURT: Well, I've got some questions for you.
16          Of course, you started out on the wrong foot.
17  Even at the age of 12 you started getting into trouble.
18  And then, of course, when you were 17, you burned down a
19  laundromat and put a knife to a guy's throat to steal his
20  car. And you were -- you spent -- well, you were sentenced
21  to 13 years in Chicago.
22          Was this in Joliet?
23          THE DEFENDANT: Stateville. And then they sent
24  me --
25          THE COURT: And how did that 13 years -- how much

```
 1  time did you serve?
 2          THE DEFENDANT:  Eleven years.
 3          THE COURT:  And then shortly after you got out of
 4  prison -- that would be 2011 -- a year later, 2012,
 5  aggravated battery on a police officer, criminal damage to
 6  property.  And you were given another five years.
 7          How much of that five years did you spend?
 8          THE DEFENDANT:  I got out on good time.  I did
 9  like 20 months.  They gave me good behavior.
10          THE COURT:  Okay.  That's all I have, Mr. Dale.
11          Anything you'd like to say?
12          MR. DALE:  Your Honor, perhaps just to reiterate a
13  couple of things that I've read.  I've come to the
14  conclusion myself -- I've listened to Mr. Rios.  I've been
15  in communication with a family member.  And what the Court
16  has just recited is absolutely true.
17          This is a young man growing up on very rough
18  streets in Chicago, and almost inevitably he got in with
19  the wrong group.  He acted out.  As a child, Mr. Rios may
20  well have had some attention deficit disorder, keeping
21  it -- remaining it difficult for him to focus.
22          That said, the last time he was released in
23  Illinois, he thought through what his past was and made the
24  decision that he needed to get out of that environment.  He
25  did.  He came to Florida.
```

```
 1              The PSR indicates quite correctly that since
 2   arriving in Florida, he's been employed.  He was employed
 3   at the time of this incident.  He's no longer a lone wolf
 4   on the street.  He was involved in an ongoing relationship
 5   and living with a woman and her children.
 6              Even the provocation that got him into the current
 7   problem I think has something of a silver lining.  There
 8   were many years in the life of Mr. Rios when a night of
 9   drinking would have had him in a bar or on the street or
10   somewhere else where he was likely to be a threat to
11   himself and to others.
12              In this instance, he stayed home.  He did his
13   drinking in his own abode.  Unfortunately, I suspect --
14              THE COURT:  Except for two charges of drinking
15   while in Florida in 2016.  Well, both of them, 2016.
16              MR. DALE:  My point is simply that little by
17   little he was changing his ways and, unfortunately, came
18   into the situation that we have here.
19              On the night in question, Mr. Rios freely admits
20   he had been drinking heavily, was intoxicated.  He frankly
21   has scattered memories of what happened.  He is not --
22              THE COURT:  Well, it's obvious from the situation
23   that he was drunk.  Nobody in their right mind would do
24   what he did with his past without being intoxicated.
25              MR. DALE:  Exactly.
```

```
 1            And yet when he had a moment of sobriety holding
 2   the weapon, he had the presence of mind to walk out of the
 3   room and place the weapon out of his own reach to address
 4   the situation.  He had gotten himself in it.  It could have
 5   obviously gone much worse.  It did not.
 6            I can't change and Mr. Rios can't change the facts
 7   of his life and what has happened, but it does seem to me
 8   that he was working at trying to improve things and little
 9   by little was accomplishing it.
10            He kept employment.  He was supporting and helping
11   to support this woman and her children.  They had an
12   argument.  And I'm guessing it had something to do with his
13   drinking, which sadly we -- most of us --
14            THE COURT:  Well, if he hadn't backed off, he
15   wouldn't be here today.  He'd be dead.
16            MR. DALE:  Another good point.  I couldn't agree
17   more.
18            But this guideline that we're looking at here is a
19   very substantial sentence.  Mr. Rios realizes that he's
20   going to get a difficult sentence.  But I don't think that
21   we need to look at him as someone who is fatally flawed and
22   will always remain a complete danger to the community.  I
23   don't think that's the path that he's on, if for no other
24   reason than age finally takes over and removes some of
25   those problems.
```

1           So my request is that, if it's possible, that the
2   Court take that into consideration.
3           It's not, it's not necessary, I don't believe, to
4   give him a sentence that's related to the hope he never
5   returns.  He's going to come out one day, and I think he'll
6   be a much better person.  He's a much better person today.
7           THE COURT:  Well, the Court has to weigh the
8   factors of the fact that he has in the past lived a violent
9   life.  And we can't speculate on the future.  But it seems
10  like more and more people who have lived violent pasts
11  sometimes snap, and that's where you get your mass
12  destruction.  So people, once they go over the top, you
13  don't know what's going to happen.
14          And the Court has to weigh that against the
15  present offense which is really not that big of a deal
16  except for the fact that he's a convicted felon in
17  possession of a firearm, which is -- everybody takes very
18  seriously.  And if he continues with the way he has since
19  he's gotten to Florida, everything will be okay.
20          But we still have a fear of people who have grown
21  up with violent pasts that they might snap, and we see that
22  more and more in this horrible society that we're starting
23  to live in.
24          MR. DALE:  Yes, sir.
25          That's all.

```
 1              THE COURT:  Anything from the Government?
 2              MR. SHECTER:  Briefly, Your Honor.
 3              Your Honor, I wanted to at the outset apologize
 4    for the late filing.  I understand it was unacceptable.  It
 5    is not the U.S. Attorney's fault.  It is my signature on
 6    it, and I take full responsibility for that.  I accept that
 7    it's stricken for the record.  And I do apologize to this
 8    Court and to Your Honor.
 9              Your Honor, we see this as a very serious crime
10    because there are so many things that could have gone wrong
11    in this instance.
12              We felt it necessary to bring in the two OPD
13    officers that were responding to the scene.  And if it
14    wasn't for their actions, we would be talking about either
15    Mr. Rios being dead, them being shot, or one of the three
16    children in that house possibly getting shot.
17              You have these OPD officers respond to a domestic
18    disturbance with a defendant who ended up being a felon in
19    possession, holding a gun --
20              THE COURT:  If you want to put somebody on the
21    stand for the record, you may do so.
22              MR. SHECTER:  That's fine, Your Honor.  I just
23    wanted them here in your presence.
24              THE COURT:  Okay.
25              MR. SHECTER:  And he puts the firearm in a room
```

```
 1   with three other children.
 2            They see him with the firearm, and these trained
 3   officers have to make a split-second decision whether they
 4   take action, fire, don't fire.  And they also saw the
 5   children.  They chose restraint.  It was the right call.
 6   But what the ifs in this situation are too grave.
 7            THE COURT:  Well, also, let the record reflect
 8   that there was a bullet in the chamber and five in the
 9   clip.
10            MR. SHECTER:  Yes, Your Honor.
11            And that being said from the prism of, well, he
12   was drunk, from the Government's position whether he was
13   drunk or not is not relevant because of his prior history,
14   violent prior history in this action.
15            When you point a firearm at police officers and
16   then you put that firearm in a room with three children who
17   are trying to sleep, that is unacceptable.  That is
18   unacceptable to the Government, and that is unacceptable to
19   our society.
20            And so the question is, what is the proper
21   sentence for such an action?  And it is the Government's
22   position that 120 months is the proper sentence, the
23   absolute maximum.  Because, Your Honor, the seriousness of
24   this offense and the fact of his history, the Government
25   would argue, compel that maximum sentence.
```

```
 1              And again, I would turn to these police officers
 2   who risk their lives every day.  And in that split-second
 3   decision, they made a decision not to shoot.  But we could
 4   be talking about dead children, a dead officer, or a dead
 5   defendant.
 6              And it is unacceptable in our society for someone
 7   with that criminal history to be in possession of a firearm
 8   and not only possess the firearm but put the lives of our
 9   officers and to put the lives of young children at risk.
10              And with that being said, that is why the
11   Government believes 120 months is not only necessary but
12   appropriate.
13              THE COURT:  Any response?
14              MR. DALE:  Well, Your Honor, I've done the same
15   thing in speculating the future.  The Government counsel
16   speculates what could have happened, what might happen in
17   the future.  You pointed out that we don't know what's
18   going to take place in the future.
19              I frankly looked at putting the weapon outside --
20   Mr. Rios himself putting it outside the reach of, his reach
21   was a means of diffusing a bad situation.
22              If you want to look at it that it's endangering
23   the children I guess who were sleeping, I don't quite see
24   that.  But we're all speculating.
25              THE COURT:  Well, this dangerous situation came at
```

```
 1   the wrong place at the wrong time.  The officers were on
 2   Pershing Avenue assisting on a traffic stop and just so
 3   happened that while at the scene they heard a female yell
 4   for help from an apartment.
 5           So after hearing the yell, they approached the
 6   apartment and saw Mr. Rios with his hand around
 7   Miss Mojica's, apparently his girlfriend, around her mouth.
 8   And they could see that she was upset.  Because when he
 9   released her, she ran to the police officers.
10           And the fact that he had the weapon and showed up
11   with it was a total act of stupidity.  And here we're faced
12   with a very serious charge in a situation that just
13   happened to come about from a traffic stop.
14           The Court, of course, has to take into
15   consideration the elements of 3553, the protection of the
16   public; also with deterrence from this happening again.
17           The Court does have to take into consideration the
18   fact that all of the violence except for this instance with
19   his girlfriend, all the violence took place in Chicago.
20   And he came down here and got beyond that and had nothing
21   further for several years other than intoxication.  And,
22   you know, he admitted starting to use alcohol and drugs at
23   the age of 12.
24           And I noticed one thing the presentence report
25   said that he last used a controlled substance next
```

```
 1  December 31.  It said that he last used it on New Year's
 2  Eve 2017, which we haven't gotten there yet.  So I assume
 3  that meant last year.
 4          And that's a problem that he's going to have to
 5  overcome or he's going to spend the rest of his life in
 6  prison.
 7          Based on all the situations, all of the factors in
 8  this case, the Court is going to sentence you, Mr. Rios, to
 9  101 months in the Bureau of Prisons, a 3-year supervised
10  release term, and $100 special assessment.
11          If you think this is an illegal sentence, you have
12  two weeks in which to appeal.  You may do so either on your
13  own or through your attorney.
14          Is there anything you'd like to state to the Court
15  now that you have been sentenced?
16          THE DEFENDANT:  No.
17          THE COURT:  Mr. Dale?
18          MR. DALE:  No, Your Honor.
19          THE COURT:  Anything from the Government?
20          MR. SHECTER:  No, Your Honor.  Thank you.
21          THE COURT:  We stand adjourned.
22          (Proceedings adjourned at 9:22 a.m.)
23                           *****
24
25
```

```
 1                    C E R T I F I C A T E
 2
 3         I certify that the foregoing is a correct
 4   transcript from the record of proceedings in the
 5   above-entitled matter.
 6
 7   April 17, 2018
 8
 9       s\   Amie R. First
         Amie R. First, RDR, CRR, CRC, CPE
10       Federal Official Court Reporter
         United States District Court
11       Middle District of Florida
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```